UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JASON GOLDTHWAITE,

       Plaintiff,

v.

SENSEAR, INC.,

       Defendant.

No. 15-CV-13143-MLW

**REPORT AND RECOMMENDATION REGARDING DEFENDANT'S MOTION TO DISMISS (Dkt. No. 11)**

August 25, 2016

CABELL, U.S.M.J.

      The plaintiff, Jason Goldthwaite (the plaintiff or Goldthwaite), alleges that the defendant, Sensear, Inc. (the defendant or Sensear), a company that sells noise cancelling headsets, misrepresented its sales projections in order to induce the plaintiff to leave a lucrative job with another employer and join the defendant. (Dkt. No. 31). The defendant moves pursuant to FED. R. CIV. P. 12(b)(6) to dismiss the operative first amended complaint. The defendant contends that the plaintiff cannot establish justifiable reliance – an element of both of his claims -- because the statements allegedly relied upon were nonactionable conditional statements and projections, and because the plaintiff admits that he took into account the possibility that the projections might be "sugarcoated." (Dkt. No. 12). For the reasons discussed below, the Court finds that the first amended complaint states claims for fraud and negligent misrepresentation, and therefore recommends that the defendant's motion to dismiss be denied.

I.  **RELEVANT BACKGROUND**

A. <u>Facts</u>

Sensear describes itself as a "global leader in developing and manufacturing best-in-class digital over-the-ear and in-the-ear headsets for use with two-way radio and Bluetooth communication devices."  SENSEAR, INC.: ABOUT US, http://www.sensear.com/corporate/about-us (last visited Aug. 24, 2016).  The plaintiff is a former Sensear Vice President of Sales.  The facts that follow are taken from the complaint and accepted as true for the purposes of the present motion.

The plaintiff met the defendant's CEO, Justin Miller ("Miller"), in 2012.  At the time, the plaintiff was well-compensated in his role as the Head of US Sales and Director of Business Development at a company called Esterline.  (Dkt. No. 31 at ¶¶ 3-4).  He was happy with his employment situation and was not seeking other opportunities.  Miller nonetheless recruited the plaintiff to join Sensear as Vice President of Sales.  (*Id*. at ¶¶ 5-6).  The compensation package that the plaintiff was offered was heavily driven by commission and stock options.  Miller represented that the plaintiff "was poised to earn in excess of $250,000 if the Company's expectations were satisfied."  (*Id*. at ¶¶ 10, 12).

Miller made certain representations to the plaintiff about Sensear's financial condition and sales expectations.  In particular, the plaintiff "was told that the Company did over 4 million dollars" in sales in the prior fiscal year and "was on track to achieve $9 million in sales" in the current fiscal year.  (*Id*. at ¶¶ 8-9).  In fact, Miller knew at the time he made these representations that both the prior year's sales figures and the current year's projections were overstated because they were the result of an unethical practice called "channel stuffing."  "Channel stuffing" refers to the practice of inflating sales figures in the short term by encouraging customers to order more product than they need with the expectation that the excess, unneeded product will eventually be

returned. Once the customers return their excess items, sales figures are readjusted downward. (*Id*. at ¶ 20). Miller was aware of and encouraged the defendant's channel stuffing practices. (*Id*. at ¶¶ 23, 27). Accordingly, at the time he furnished the plaintiff with the 2011 sales figures and 2012 projections, Miller knew that those figures were grossly overstated.

The plaintiff was an experienced business person and knew that Miller's projections might be "sugarcoated." With that in mind, the plaintiff discounted the value of Sensear's offer by ten percent before comparing it to his Esterline compensation. Even with that discount, the plaintiff concluded that the Sensear offer was worth considerably more than what he was earning at Esterline. (*Id*. at ¶ 16).

In reliance on the sales figures and projections the defendant provided, the plaintiff left his job at Esterline and joined Sensear. (*Id*. at ¶ 19). During his two years of employment, the defendant's prior channel stuffing caught up with it. Several customers made large returns, which forced sales numbers downward. In 2013, the plaintiff learned that the defendant was actually "losing close to $4 million dollars a year" and processing monthly returns "in excess of $300,000." (*Id*. at ¶ 29). Though the plaintiff "worked with his sales and marketing team on trying to close every opportunity," he only earned $15,000 in commission and bonuses during his two years of employment (*i.e.* 95 percent less than projected). The plaintiff would have earned substantially more had he remained at Esterline. (*Id*. at ¶¶ 38, 45).

### B. Procedural History

The plaintiff filed his original complaint on July 21, 2015, in the Middlesex Superior Court. On August 13, 2015, the defendant removed the action to this Court on the basis of diversity of citizenship. (Dkt. No. 1). On August 19, 2015, the plaintiff filed an assented to motion to amend the complaint to fix a typographical error. (Dkt. No. 6). The Court granted the

motion on August 20, 2015, and the first amended complaint was filed as a stand-alone document on August 22, 2016. (Dkt. No. 31). The first amended complaint alleges two causes of action, fraud, and negligent misrepresentation. Both claims allege that the plaintiff left Esterline and joined Sensear in reliance upon Miller's false statements about Sensear's financial condition and performance. (*Id.*)

On September 10, 2015, the defendant moved to dismiss the first amended complaint pursuant to FED. R. CIV. P. 12(b)(6). (Dkt. No. 11). The defendant argues that the plaintiff has not stated and cannot state a claim for relief because he cannot demonstrate justifiable reliance on any of the defendant's statements, a necessary element of both fraud and negligent misrepresentation. Specifically, the defendant argues that: 1) the plaintiff's allegation that he "considered the possibility that Mr. Miller may have sugarcoated the [defendant's financial] projections" demonstrates that the plaintiff did not believe the truth of Miller's statements; 2) Miller's statements were qualified such that reliance was not reasonable as a matter of law; and 3) the information and documents that the defendant provided were "projections" and "plans," which cannot reasonably be relied upon as a matter of law. (Dkt. No. 12).

## II.   ANALYSIS

### A.   Legal Framework

Under the Federal Rules of Civil Procedure, the first amended complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8 (a). "[T]he circumstances constituting fraud," however, must be plead with particularity. FED. R. CIV. P. 9(b). This means that the first amended complaint must "specify the who, what, where, and when of the allegedly false or fraudulent representation." *Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 29 (1st Cir. 2004).

In considering a defendant's motion to dismiss for failure to state a claim, a court must "accept as true all well-pleaded facts set forth in the complaint and draw all reasonable inferences therefrom in the pleader's favor." *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011) (quoting *Artuso v. Vertex Pharmaceuticals, Inc.,* 637 F.3d 1, 5 (1st Cir. 2011)). In order to survive a motion to dismiss, the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). The "[f]actual allegations must be enough to raise a right to relief above the speculative level… on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555 (internal citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully," and is met when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Twombly,* 550 U.S. at 556). However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. at 678 (*quoting Twombly,* 550 U.S. at 555). Simply, the Court should assume that well-pleaded facts are genuine and then determine whether such facts state a plausible claim for relief. *Id.* at 679.

**B.  Discussion**

To plead a fraud claim, the plaintiff must allege that the defendant "made a false representation of material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff reasonably relied upon the representation as true and acted upon it to his damage." *Masingill v. EMC Corp.*, 449 Mass. 532, 540 (2007); *Eureka Broadband Corp. v. Wentworth Leasing Corp.*, 400 F.3d 62, 68 (1st Cir. 2005).

To plead a negligent misrepresentation claim, the plaintiff must allege that the defendant: "(1) in the course of its business; (2) supplied false information for the guidance of others; (3) in their business transactions; (4) causing or resulting in pecuniary loss to those others; (5) by their justifiable reliance on the information; and that it (6) failed to exercise reasonable care or competence in obtaining or communicating the information." *Bhammer v. Loomis, Sayles & Co., Inc.*, No. 15-14231-FDS, 2016 WL 3892371, *5 (D. Mass. Jul. 14, 2016) (citing *DeWolfe v. Hingham Centre, Ltd.*, 464 Mass. 795, 799-80 (2013)).

The first amended complaint adequately alleges facts to establish each of the elements of both claims.  Briefly, the first amended complaint alleges that in order to induce the plaintiff to join Sensear, Miller falsely represented Sensear's financial condition, including stating that Sensear "did over 4 million dollars" in sales in the prior fiscal year and "was on track to achieve $9 million in sales" in the current fiscal year, and that the plaintiff "was poised to earn in excess of $250,000 if the Company's expectations were satisfied," (Dkt. No. 31 at ¶¶ 8-10, 12), which Miller knew or should have known was false because Sensear was engaged in channel stuffing to inflate its sales figures. (*Id*. at ¶¶ 20, 23, 27).  The first amended complaint further alleges that in reliance upon Miller's representations, he joined Sensear, where he made significantly less than he would have at his former employer.  (*Id*. at 19, 38, 45).

The defendant argues however that the plaintiff has not adequately pled either cause of action because the facts alleged in the first amended complaint demonstrate that the plaintiff did not reasonably rely on any of the defendant's statements.

The defendant argues that the plaintiff could not, as a matter of law, have relied upon any of the financial information that the defendant provided during the recruitment process because that information was qualified and forward-looking.  It is true that projections are ordinarily not

actionable statements of fact. *See Russell v. Cooley Dickenson Hosp.*, 437 Mass. 443, 458 (2002) (the false statement should not be "merely a matter of opinion, estimate, or judgment, but [rather] susceptible of actual knowledge"). But a fraud claim can be premised on projections and qualified statements if the defendant knew those statements were false when made. "'[S]tatements of present intention as to future conduct may be the basis for a fraud action if the statements misrepresent the actual intention of the speaker and were relied upon by the recipient to his damage.'" *Bhammer*, 2016 WL 3892371, at *4 (citing *Kenda Corp., Inc. v. Pot O'Gold Money Leagues, Inc.*, 329 F.3d 216, 226 (1st Cir. 2003)). For example, in *Bhammer*, the district court denied a motion to dismiss where a defendant allegedly told a recruit that it was committed to providing one of its funds "with the time and resources needed for success" and that it believed the fund had an appropriate and well-defined strategy. *Id*. at *1. The court rejected the argument that these statements were non-actionable projections and opinion because the complaint alleged that the defendant knew at the time it made the statements that it did not actually intend to commit adequate time and resources in the future or believe that the fund strategy was appropriate. *Id*. at *4.

Here, as in *Bhammer*, the first amended complaint adequately alleges facts which, if true, establish that the defendant knew at the time it shared them with the plaintiff that its projections and statements of future expectations could not possibly come to fruition. Specifically, the complaint alleges that the defendant's sales figures were inflated by its channel stuffing scheme such that sales figures would inevitably be adjusted downward once customers returned the excess product they had been induced to buy.

The defendant also argues that the first amended complaint's allegation that the plaintiff considered that Miller might be "sugarcoating" the defendant's projections demonstrates that the

plaintiff did not actually rely on the information the defendant provided him. The defendant reads too much into a single allegation taken out of context. Read in the light most favorable to the plaintiff, the first amended complaint alleges that the plaintiff was aware that the financial projections he was provided were forward-looking and he therefore considered that actual results might come in below the defendant's projections. There is nothing in the first amended complaint to suggest that the plaintiff considered, or should have had reason to consider, the possibility that the defendant was engaged in an unethical scheme to inflate its short term sales figures, a scheme which would ultimately result in actual sales figures that were 95 percent lower than projected.

These facts are readily distinguishable from *Russell* and *Cumis Insurance Society, Inc. v. BJ's Wholesale Club, Inc.*, relied upon by the defendant. In *Russell*, a plaintiff who was out on disability leave alleged that she had relied on her employer's promise to keep her job open beyond the usual disability leave period. Because the plaintiff was physically unable to return to work during or after the leave period, the court held that she had not actually taken any action in reliance upon the employer's statements. *Russell*, 437 Mass. at 458-59. Here, the plaintiff alleges that he actually did act in reliance upon the defendant's statements. Specifically, he left his former employer and joined Sensear.

In *Cumis*, the court held that a merchant's failure to comply with a contractual duty regarding storage of customer information did not give rise to a tort claim. The court explained that the plaintiff could not have reasonably relied upon the defendant's promise to comply with data storage regulations where the plaintiff was aware of ongoing non-compliance by merchants and the contract set forth specific fines for violations, demonstrating that breach of the data storage regulations – the very behavior alleged to constitute the fraud – was expected. *Cumis*

*Ins. Society, Inc. v. BJ's Wholesale Club, Inc.*, 455 Mass. 458, 474-75 (2009). Here, the defendant argues that because the plaintiff concedes that he understood that the defendant might engage in puffery and present its financial picture in the most favorable light possible, the plaintiff also assumed a very different risk – that the defendant's sales figures were the product of behavior that was, at best, unethical, and, at worst, illegal. As discussed, there are no facts in the first amended complaint to suggest that the plaintiff was aware of or even suspicious about the possibility that the defendant was engaged in channel stuffing before he joined Sensear.

In short, the first amended complaint adequately alleges justifiable reliance.

### III. CONCLUSION

For the foregoing reasons, the Court finds that the plaintiff has stated claims for fraud and negligent misrepresentation. The Court thus respectfully recommends that the defendant's motion to dismiss for failure to state a claim be denied.

The parties are hereby advised that under the provisions of Federal Rule of Civil Procedure 72(b), any party who objects to this recommendation must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. *See Keating v. Secretary of Health and Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Park Motor Mart, Inc. v. Ford Motor Co.*,

616 F.2d 603 (1st Cir. 1980); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

 

                                               /s/ Donald L. Cabell  
                                               DONALD L. CABELL, U.S.M.J.

DATED:  August 25, 2016